IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF KENTUCKY – AT COVINGTON

CASE NO: 2:24-cv-00017-DLB-CJS

**SCOTT WORKMAN**

AND

**SCOTT'S GARAGE, LLC**                                                                                    **PLAINTIFFS**

v.

**JOSHUA L. KELLY**, *in his official and individual capacities*,
I-75 Southbound Weigh Station
Crittenden, KY 41030

AND

**MATTHEW HUTTI**, *in his official and individual capacities*,
I-75 Southbound Weigh Station
Crittenden, KY 41030

AND

**ERIC WALKER**, *in his official and individual capacities,*
160 Citation Lane
Campbellsburg, KY 40011

AND

**JOHN HINDMAN**, *in his official and individual capacities,*
160 Citation Lane
Campbellsburg, KY 40011                                                                              **DEFENDANTS**

### PLAINTIFFS' AMENDED VERIFIED COMPLAINT FOR MONEY DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, through Counsel, and pursuant to FRCP 15(a)(1)(B) for their verified Amended Complaint state as follows:

### Introduction

1. It is clearly established law that a citizen may express dissatisfaction with the government. It is further clearly established law that a government agent may not cancel a contract with a

1

citizen's business as a consequence for that citizen's expression of his dissatisfaction with the government. Defendants violated these clearly established principles in their cancellation of their contract with Plaintiff Scott's Garage as a consequence of Plaintiff Scott Workman's expression of his dissatisfaction with the government.

## Parties

2. Plaintiff Scott Workman ("Workman") is a resident and citizen of Kentucky and the United States, and is the owner of Plaintiff Scott's Garage, LLC.

3. Plaintiff Scott's Garage, LLC ("Scott's Garage") is a Kentucky Limited Liability Company with its principal place of business located at PO Box 917, Warsaw, KY 41095. Workman is the owner of Scott's Garage.

4. Defendant Joshua L. Kelly ("Kelly") is a Commercial Vehicle inspector for the Kentucky State Police, and is a resident and citizen of Kentucky and the United States; he is sued in his individual capacity for damages, and in his official capacity for prospective injunctive relief.

5. Defendant Matthew Hutti ("Hutti") is a Sergeant for the Kentucky State Police, a supervisor of Defendant Kelly, and is a resident and citizen of Kentucky and the United States; he is sued in his individual capacity for damages, and in his official capacity for prospective injunctive relief.

6. Defendant Eric Walker ("Walker") is a Captain and Post 5 Commander with the Kentucky State Police, and is a resident and citizen of Kentucky and the United States; he is sued in his individual capacity for damages, and in his official capacity for prospective injunctive relief.

7. Defendant John Hindman ("Hindman") is a Lieutenant for the Kentucky State Police, and is a resident and citizen of Kentucky and the United States; he is sued in his individual capacity for damages, and in his official capacity for prospective injunctive relief.

**Jurisdiction and Venue**

8. Subject matter jurisdiction over the federal claims and causes of action asserted by Plaintiffs in this case is conferred on this Court pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, 28 U.S.C. § 1331, 28 U.S.C. §§ 2201 and 2202, and other applicable law.

9. Venue in this division is appropriate, since all of the deprivations of Plaintiff's Constitutional Rights occurred in Kenton and Gallatin Counties, Kentucky, and a Defendant resides in this District and Division.

**Facts Common to all Claims**

10. On or about September 20, 2023, in the course of conducting law enforcement operations, Defendant Kelly stopped and/or conducted inspection related activities related to a driver who was employed by Plaintiff Scott's Garage, who was driving a tow truck vehicle that was hauling a police cruiser, for a commercial vehicle inspection.

11. Plaintiff Scott Workman, while bringing a fire extinguisher and traffic triangles to one of his vehicles, discovered that his employee had been stopped.

12. At this point, Plaintiff Workman approached the stopped vehicle and asked his employee why he had been pulled over, and whether the employee had been respectful to Defendant Kelly.

13. Plaintiffs' employee informed Plaintiff Workman that he did not know why he was initially stopped, but that he was being cited for a windshield violation.

14. After this, Defendant Kelly returned to the employee's vehicle, and Plaintiff Workman then engaged in conversation with Defendant Kelly.

15. In this conversation, Plaintiff Workman began by asking Defendant Kelly why his driver was pulled in for an inspection.

16. Defendant Kelly responded by saying he did not need a reason to pull Plaintiffs' employee in for inspection.

17. Believing that the stop was due to window tinting, Plaintiff Workman attempted to explain to Defendant Kelly that Kentucky law allows for window tinting on Plaintiffs' vehicles as they are emergency commercial vehicles.

18. Plaintiff Workman, concerned about making sure his employee was able to transport the police cruiser in a timely manner, asked Defendant Kelly how long the stop would be.

19. Defendant Kelly informed Plaintiff Workman that because the truck's windshield was cracked, Defendant cited him for a windshield violation.

20. Plaintiff Workman told Defendant it was not a crack, but a rock chip that had been there and had not spread since 2021 when Plaintiff Scott's Garage had purchased the truck.

21. Defendant Kelly said the rock chip was a cross-haired crack and that it was illegal to operate the vehicle with the crack.

22. For the avoidance of all doubt, there was no violation of either window tinting, or the chip in the window; instead, Kelly incompetently, if not maliciously, issued citations for violations that did not exist.

23. Plaintiff Workman, in a conversational tone and while smiling to indicate sarcasm, said "I can't believe you aren't impounding the truck over that."

24. In retaliation for Plaintiff Workman's conversation with Defendant Kelly and Plaintiff Workman's questioning of the basis for his employee's stop, Defendant Kelly responded, "I will make sure I will note in the citation how disrespectful you were being."

25. Plaintiff Workman, in a conversational tone, having realized that Defendant Kelly was attempting to fabricate a basis for future retaliation against Plaintiffs, responded, "I can see how this is going right now, we'll take our citation and go."

26. Defendant Kelly, clearly angry and now escalating the situation further, responded to Plaintiff Workman, "I can have you removed from the premises."

27. Plaintiff Workman responded in a conversational tone, "I am leaving as soon as you give us the citation."

28. Defendant Kelly, clearly angry then stated, "Would you like me to have you removed? If you want to continue being irate, I will call a Trooper and have you removed from the facility."

29. Plaintiff Workman, fearful of Defendant Kelly's hostility and understanding that Defendant Kelly was attempting to find a reason to escalate the conversation and retaliate, responded in a calm but shaken tone, "I am leaving, go fuck yourself."

30. The encounter ended with no further incident.

31. For the avoidance of all doubt, Plaintiff Workman was never detained for suspicion of any criminal or civil offense.

32. For the avoidance of all doubt, Plaintiff Workman was free to leave at any time during the September 20, 2023 encounter.

33. For the avoidance of all doubt, Plaintiff Workman committed no criminal offense, civil violation, nor was he charged as such.

34. The entirety of Plaintiff Workman's questioning, conversing, and disputing of his employee's citation was protected under the First Amendment.

35. After the encounter, in an attempt to fabricate a basis for future retaliation, Defendant Kelly submitted an incident report to his employer (the "Report").

36. In the Report, Defendant Kelly claims that Plaintiff Workman was "sarcastic and ill mannered" and used an "aggressive, rude tone of voice" when Plaintiff Workman expressed his belief that the window tinting on Plaintiff Scott's Garage was legal.

37. In the report, Defendant Kelly claims that Plaintiff Workman "began smiling sarcastically and used profanity with a rude tone" while Plaintiff Workman discussed the rock chip on the windshield.

38. In the Report, Defendant Kelly admits to threatening to have Plaintiff Workman removed because of Plaintiff Workman's constitutionally protected speech.

39. In the Report, Defendant Kelly falsely claimed, in an attempt to fabricate criminal and civil violations, that Plaintiff Workman backed out, floored the pedal, and filled the air with black smoke down the ramp with his Chevrolet 3500.

40. To be clear, Plaintiff Workman did not do what Defendant Kelly alleged he did in Paragraph 38, and was not stopped nor cited for doing so.

41. Even assuming that Plaintiff Workman was sarcastic, had poor manners, was rude, or even spoke with an aggressive tone or used profanity, Plaintiff Workman still committed no criminal or civil offense, and was not charged as such.

42. Even assuming that Plaintiff Workman was sarcastic, had poor manners, was rude, or even spoke with an aggressive tone or used profanity, the entirety of Plaintiff Workman's questioning, conversing, and disputing of his employee's citation was protected under the First Amendment.

43. After the encounter, Defendant Kelly contacted Defendant Hutti to document the event, in an attempt to fabricate a basis for future retaliation.

44. In fact, Defendant Kelly admitted in his Report that he created his incident report and contacted Defendant Hutti in anticipation of Plaintiff Workman reporting Defendant Kelly for his hostile threats against Plaintiff Workman for his protected speech.

45. Defendant Kelly acted maliciously, and in part because he had a personal animus against Plaintiff Workman.

46. Defendant Hutti, realizing that Defendant Kelly was likely going to face a complaint for his hostile threats against Plaintiff Workman for his protected speech, encouraged Defendant Kelly to form this report and submit it to inspector J. Witten (4141).

47. In response to this incident, on September 22, 2023, Defendant Hutti wrote a Memorandum to Defendant Walker, requesting that Plaintiff Scott's Garage (incorrectly referring to them as Scott's Towing) be removed from its position in the Post 5 Wrecker Rotation "due to the owner's blatant disrespect for this agencies [sic] employees and the Federal Regulations."

48. To be clear, Plaintiff Scott's Garage has *never* run into an issue before the September 20, 2023 encounter, with its state contracts due to its window tinting, which is legal in Kentucky because they operate emergency commercial vehicles.

49. And for the avoidance of all doubt, a equipment citation/violation would not be grounds for the removal from the wrecker rotation.

50. In fact, Defendant Hutti *never* cited to any federal regulation or other lawful basis which he alleged was the basis for cancelling Plaintiff Scott's Garage's Contract with Kentucky State Police.

51. In the Memorandum, Defendant Hutti blatantly fabricated criminal conduct against Plaintiff Workman, alleging he was "extremely disorderly," in an attempt to fabricate a reason to cancel Plaintiffs' contract with Kentucky State Police for simply questioning Defendant Kelly.

7

52. To be clear, Plaintiff Workman was *never* arrested for disorderly conduct, nor was he even threatened with such a charge.

53. Defendant Hutti also described Plaintiff as "disrespectful and argumentative."

54. To be clear, even if that assertion was true, Plaintiff Workman's speech on September 20, 20233 is protected under the First Amendment by clearly established law indicating that questioning police and arguing with them is protected under the First Amendment. *See City of Houston, Tex. v. Hill*, 482 U.S. 451, 462-63 (1987); *Greene v. Barber*, 310 F.3d 889, 895 (6th Cir. 2002), and other applicable law.

55. Rather, the sole basis of Defendant Hutti's request to remove Plaintiff Scott's Garage was the fact that Plaintiff Workman conversed with Defendant Kelly and disputed the citation that was written for Plaintiffs' employee.

56. Defendant Hutti acted maliciously, and in part because he had a personal animus against Plaintiff Workman and with a desire to punish him for his protected speech.

57. On September 28, 2023, Defendant Walker emailed Defendant Hindman, indicating that Plaintiff Scott's Garage was to be removed from their rotation on the Post 5 rotating wrecker log for cause, specifically citing to the September 20, 2023 encounter as the basis for the removal.

58. On October 3, 2023, by a letter signed by Defendant Hindman, removed Plaintiff Scott's Garage "for cause" from their contract with Kentucky State Police as the Post 5 rotating wrecker log.

59. Since October 3, 2023, Scott's Garage has remained removed from the rotating wrecker log by the official actions of Hindman, Walker, Hutti, and Kelly, all of which were within the purview

8

of their actions by operation of their government position, and thus the retaliation at issue continues to the present and will continue in the future absent prospective injunctive relief.

60. The October 3, 2023 letter cites to no violations of the law, state or federal, statutory or regulatory.

61. Rather, the letter cites to the September 20, 2023 encounter between Plaintiff Workman and Defendant Kelly as the sole basis of removal.

62. On October 9, 2023 Plaintiff Workman spoke on the phone with Defendant Hindman, in which Workman raised the issue of the September 20, 2023 encounter, what happened, and that his removal from the wrecker rotation was due to retaliation for protected speech. Hindman acknowledged that this was true, but that Workman needed to take the issue up with Hutti.

63. On October 12, 2023, Plaintiff Workman called Defendant Walker, and Walker alleged that the basis of Plaintiffs' removal was the September 20, 2023 was "conduct," in an attempt to fabricate a pretext for removing Plaintiffs. Workman denied that this was the case.

64. On the phone call, Defendant Walker indicates his removal was for cause, and recommended Plaintiff Workman contact CVE.

65. Defendant Walker *never* alluded to any violations of law, state or federal, statutory or regulatory, as the basis for Plaintiffs' removal, but simply alluded to Plaintiff Workman's encounter with Defendant Kelly and Plaintiff Workman's associated "conduct [i.e., constitutionally protected speech]."

66. On October 12, 2023, Defendant Walker, in an attempt to further fabricate criminal conduct upon Plaintiff Workman, claimed that Plaintiffs were removed from the rotation for "menacing actions toward weigh scales inspector."

9

67. To be clear, at no point was Plaintiff Workman charged, convicted, cited, or even threatened with arrest for menacing. To be clear, at no time did Workman intentionally place any other person in reasonable apprehension of imminent physical injury.

68. Up until this point, not one other Defendant ever alleged that Plaintiff Workman committed the criminal act of menacing.

69. The removal of Plaintiff Scott's Garage from the Post 5 rotating wrecker log, which continues to the present and will continue in the future absent injunctive relief, for Plaintiff Workman's constitutionally protected free speech has caused substantial damages to Plaintiffs, including financial damages, lost revenue, reputational damages, emotional damages, humiliation, and other damages to be proven at trial.

### Count I – Violation of the First Amendment (42 USC § 1983, all Defendants)

70. Plaintiffs reincorporate the preceding paragraphs as if fully stated herein.

71. Plaintiff Workman engaged in clearly established protected speech in conversing with, questioning, and challenging Plaintiffs' employee's citation with Defendant Kelly. *See City of Houston, Tex. v. Hill*, 482 U.S. 451, 462-63 (1987); *Greene v. Barber*, 310 F.3d 889, 895 (6th Cir. 2002), and other applicable law.

72. Defendants retaliated against Plaintiffs for this protected speech by engaging in adverse action that would deter a person of ordinary firmness from engaging in such protected speech, namely by cancelling Plaintiff Scott's Garage's contract with Kentucky State Police, removing Plaintiff Scott's Garage from the Post 5 rotating wrecker log. *O'Hare Truck Serv. v. City of Northlake*, 518 U.S. 712 (1996), *Anders v. Cuevas*, 984 F.3d 1166 (6th Cir. 2021), *Heykoop v. Mich. State Police*, 838 Fed. Appx. 137 (6th Cir. 2020), and *Lucas v. Monroe County*, 203 F.3d 964 (6th Cir. 2000)

73. There is a causal connection between Plaintiff's protected speech and the adverse actions, in part because Defendants admitted in communications and emails that is why they engaged in the adverse action.

74. Defendants have thus violated Plaintiffs' clearly established First Amendment rights, as set forth in *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999), establishing that all three elements of a First Amendment retaliation claim are met here.

75. Defendants, acting under color of any statute, ordinance, regulation, custom, or usage, of the Commonwealth of Kentucky, subjected the Plaintiffs, citizens of the United States, to be deprived of his rights, privileges, or immunities secured by the Constitution, and thus are liable to the parties injured under 42 U.S.C. § 1983.

76. Furthermore, as a consequence and the proximate and actual cause of the foregoing and the actions of the individual capacity Defendants, Plaintiffs have suffered various damages, including, without limitation, lost revenue, present and past, reputational harm, emotional damages, and other damages, which exceeds $250,000.00. Plaintiffs seek the foregoing damages from the individual capacity Defendants.[1]

77. Plaintiffs seek declaratory relief in the form of a Declaratory Judgment that Defendants' actions constituted unconstitutional First Amendment Retaliation.

78. Plaintiffs further seek a preliminary injunction against the official capacity Defendants (all of whom are empowered to implement this relief) for prospective injunctive relief, restoring

---

[1] For the avoidance of all doubt, this Complaint seeks prospective injunctive relief against the official capacity Defendants; and monetary damages against Defendants in their individual capacities. The complaint does not seek monetary damages against Defendants in their official capacities.

Plaintiff Scott's Garage's contract with Kentucky State Police and the post 5 wrecker log, against the official capacity Defendants, pending resolution of this case.

79. Plaintiffs further seek a permanent injunction against the official capacity Defendants (all of whom are empowered to implement this relief) for prospective injunctive relief, restoring Plaintiff Scott's Garage's contract with Kentucky State Police and the post 5 wrecker log, , all of whom are empowered to implement this relief, and further preventing Defendants, in their official capacities, from cancelling Plaintiff Scott's Garage's contract with Kentucky State Police for reasons related to this case.

80. Plaintiff further seeks punitive damages against all Defendants, in their individual capacities, since the actions complained of were motivated by evil motive or intent, and/or involved reckless or callous indifference to the federally protected rights of Plaintiff. Plaintiff demands judgment on these punitive damages against Defendants, in their individual capacities, in an amount to be determined at trial, but not less than $250,000.00, exclusive of interests and costs.

81. Plaintiffs further seek their reasonable attorney fees and costs under 42 U.S.C. § 1988, against Defendants in both their official and individual capacities, for these violations.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand judgment against Defendants as prayed for, including:

- That this Court issue a declaration that the cancellation of Plaintiff Scott's Garage's contract with Kentucky State Police was unconstitutional First Amendment Retaliation;

- That Plaintiffs be awarded preliminary and permanent injunctive relief against the official capacity Defendants, restoring Plaintiff Scott's Garage's contract with Kentucky State Police and the post 5 wrecker log, preventing further retaliation, and such other equitable relief as may be appropriate;

- That Plaintiffs be awarded money damages, including both compensatory and punitive damages against the Defendants in their individual capacities only, in an amount to be proven at trial, and exceeding $250,000.00, exclusive of interests and costs;

- That trial by jury be had on all issues so triable;

- That Plaintiffs be awarded their costs in this action, including reasonable attorney fees under 42 U.S.C. § 1988 against Defendants in their official and individual capacities; and

- Such other relief as this Court shall deem just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury for all claims so triable.

/s/ Christopher Wiest_____
Christopher Wiest (KBA 90725)

                          Respectfully submitted,

                          /s/ Christopher Wiest_____
                          Christopher Wiest (KBA 90725)
                          Theodore Roberts (KBA 100610)
                          Chris Wiest, Atty at Law, PLLC
                          50 E. Rivercenter Blvd, Ste. 1280
                          Covington, KY 41011
                          513/257-1895 (c)
                          859/495-0803 (f)
                          chris@cwiestlaw.com

                          /s/Thomas B. Bruns_____
                          Thomas Bruns (KBA 84985)
                          4555 Lake Forest Drive, Suite 330
                          tbruns@bcvalaw.com
                          513-312-9890
                          ***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I certify that I have served the foregoing upon Counsel of record, via CM/ECF, this 12 day of April, 2024.

/s/ Christopher Wiest_____
Christopher Wiest (KBA 90725)

## VERIFICATION

Pursuant to 28 U.S.C. 1746, I, Scott Workman, on behalf of myself and Scott's Garage, LLC declare under penalty of perjury that I have read the foregoing Amended Verified Complaint, and state that the factual statements therein are true and accurate to the best of my knowledge.

Executed on April 12, 2024.

_____
Scott Workman